The People of the State of Illinois, Defendant in Error, v. Zaidee Hunt, Plaintiff in Error.

### Gen. No. 15,801.

EVIDENCE—*effect of written confession.* A written confession signed by the accused if discredited in part loses much of its probative force.

Error to the Municipal Court of Chicago; the Hon. FREDRICK L. FAKE, JR., Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with judgment here. Opinion filed June 16, 1911.

CHARLES M. THOMPSON, for plaintiff in error.

JOHN E. W. WAYMAN, for defendant in error; OTTO B. SCHRAM, of counsel.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Plaintiff in error was tried in the Municipal Court of Chicago upon a charge of larceny from Marshall Field & Company of several small articles of merchandise, aggregating in value the sum of $11.84, on the 3rd day of July, 1909. A jury was waived and the judge found her guilty of the charge, and sentenced her to imprisonment for one day in the county jail, and imposed a fine of $22 and costs. This finding and sentence she seeks to reverse in this court upon the ground that the finding is against the weight of the evidence.

At the same time, she was tried and convicted of the larceny of sundry small articles of the total value of $2.75 from Rothschild & Company, and upon that finding was sentenced to imprisonment in the county jail for one day and to pay a fine of $4.50 and costs. The two cases were tried together in the court below, and were heard together in this court.

From the evidence it appears that plaintiff in error was at that time about thirty-five years of age, married, and living with her husband and children in the City of Chicago, and that on the day in question she came down town for the purpose of doing some shopping, and had with her a young girl of fourteen, who was a domestic in her home. Together they went to Marshall Field's, where they made several purchases, and afterwards to various other stores and places of business, including Hillman's, The Fair, and finally, to the store of Rothschild & Company, at which last mentioned place, as they were about leaving the store, she and the maid were arrested by the house detective, and taken to the office of the superintendent, where they were interrogated concerning various articles alleged to have been stolen at this and other stores during the day, which were there unwrapped before them. From this place they were taken to the office of a

detective agency, where the articles were again unwrapped, and where the defendant and the girl were separately interrogated concerning them. These interviews resulted in a written confession, signed by both the defendant and her maid. This confession was prepared by the detectives after these interviews, and after being thus prepared, was read over once, and perhaps twice, by the defendant before she signed it. This written confession specifically included several articles therein stated to have been stolen from places other than Marshall Field's, and which, upon the trial, were satisfactorily proven to have been bought and paid for. The defendant claimed, upon the trial, that the alleged confession was erroneous in many particulars, and that though she knew the statements made in it were not true, she signed it for the purpose of securing her freedom and that she might be allowed to go home.

It appears that she was arrested about 4:30 Saturday afternoon, and that she had been detained for some time in the detective's office, and was greatly mortified at the charge against her, and filled with anxiety to get home, to her husband and children.

Upon the trial, she not only denied having stolen the articles mentioned in the complaint, but asserted the inaccuracy and untruthfulness of the confession, giving not only the reasons already ascribed for signing it, but, in addition, claimed that she had been badgered and vilified by the detectives and was nearly in a state of nervous distraction.

At the trial, several witnesses testified to her having theretofore sustained a good reputation, and, as before stated, it appeared that several of the articles stated in the confession to have been stolen had, in fact, been bought and paid for by her.

While her explanations as to her signing the confession are not at all satisfactory, and while we do not fully credit her statements that she was abused by the detectives, the fact still remains that the confession specifically included articles which were shown upon the trial to have been bought and

paid for by her, which necessarily discredits the effect of the confession, as evidence against her.

We have carefully gone over the entire record in the case. In this case there is no direct evidence of the *corpus delicti,* and notwithstanding the strong presumption created by the finding of the trial court, who saw and heard the witnesses testify, we have reached the conclusion that the evidence, as a whole, does not reach that degree of certainty required to sustain a conviction in a criminal case. Indeed, the trial judge himself indicated great doubt as to his duty in the premises.

No substantial purpose would be subserved by rehearing at length, the testimony. It is sufficient to say that, applying the law which requires that, if the evidence when all considered leaves a reasonable doubt of guilt of the accused, it is the duty of the courts to solve that doubt in favor of the defendant, we must reverse the judgment of the court below. Inasmuch as there is no probability that the evidence upon a second trial would substantially differ from that already heard, we think it our duty to reverse without remanding, and enter judgment here upon a finding of facts.

*Reversed with judgment here upon a finding of facts.*